May it please the court, my name is Nina Fuller. I represent the plaintiff, who is also the appellant, Susan Parker. Now, Mrs. Parker was a named insured on an Allstate policy, and there seems to be a little confusion about this on the part of Allstate, but she was in fact a named insured. As part of the policy, she purchased uninsured motorist coverage. A separate premium was paid for the coverage, and Allstate collected those premiums, had no problem collecting the premiums. The difficulty came when it was time to use her coverage. Mrs. Parker was hit and injured by an uninsured motorist. At this point, the insurance company, Allstate, begins a pattern of harassment and abuse aimed at customer. In fact, reading over the... How long was the taped statement that she gave? How complete was that? It was a lengthy statement. I can't, I don't remember. It's been some time. I don't remember exactly how long it was. Was that taken by a claims agent from them, or was it taken by an attorney? It was taken, my it was over 30 minutes. Again, I'm not sure exactly how long it was, but it was taken by the claims agent, whose name appears first in the materials. Okay, so they schedule this examination under oath, and it looks like there's confusion between you and the Allstate attorney as to whether it's going to go forward. Is it your argument that you called the day before, September 16th, and tried to confirm that she was going to appear on the 17th? Your Honor, that's not an argument. That is, in fact, what happened, is that I did call counsel, and I was told by his office, this is all in the record, that he was present in the office, but was not available to the phone. When I left a message for him, he did not return my call. So he sends you a fax later in that afternoon? That's right, saying, and again, this part is confusing. He said, my recollection is, you should call to reschedule. Well, what's wrong with that? What's confusing about calling to reschedule? Because Allstate had already said it for the 17th. I said, what's confusing, in regards to what they said before, they sent you and scheduled it. You sent back and said, well, maybe I'll come and maybe I won't. I'm going to, we're going to I understand you made a phone call. At the same time, it looks like stuff almost passed in the, passed each other. He said something, he says, look, call my office and reschedule. Obviously, he's saying to you, I mean, I should think it's obvious. Maybe it threw you in a terrible confusion. How can you be rescheduling when I told him I wasn't coming to that, but now I gave him a phone call to ask if it was still on, and he sent me a fax and said, you haven't called to reschedule. Let's reschedule it and do it by September 30th. But that just confused the heck out of you, right? And so you, so you decided to ignore it. Is that right? Not at all, your honor. Here's what happened. And that is, I did not, as you recall, I did call to confirm it was going on the following day. Before you got his fax, right? So you called to confirm, you chose. The 17th is a date they chose, they said. And so... That's not relevant whether they said it or not. You had already told them, you had already told them that you weren't necessarily going to come. You were going to review things and decide whether you were going to bother coming or not. And then you called them, and at the same time they sent you and suddenly said, look, let's reschedule it. Well, that wasn't, if you look at it, that's not quite the wording there. You have not contacted my office to reschedule your client's examination, to reschedule the examination. Please be advised if you fail to do it, you'll result in denial of the claim. Please contact me on or before September 30th. Now that comes after your phone call. And it's obviously incorrect, because I did call him. I mean, he says I had not called his office. In fact, I did call him. You know, you folks sound like you're trying to play hardball as opposed to trying to resolve a case. It's hard for me to picture my getting a letter like that into an office and saying, oh, huh, he's saying to contact to reschedule. How can you possibly do that? Huh, I'll fix him. I'm not going to contact him to reschedule. That's really kind of interesting. And so these show up and guess what? He's not there, because he didn't think he was supposed to be, according to him. According to him, that's right. Okay, so there we are. So now that's behind us. So then he says, but later, he said, let's schedule it. You haven't scheduled it yet. And you say, the heck with that. I went to your office once and you weren't there. I'm filing my lawsuit. And you file it, right, forthwith, right? How does that show any good faith in terms of trying to schedule this, assuming the examination is required? How does it show any good faith in trying to get that done before one goes to litigation and winds up in the Ninth Circuit on appeal? How does that show any kind of good faith? And you're talking here, telling us what bad people they are. I understand. Okay. Is that a rhetorical question? Yeah, sure. How does that show good faith? Okay. If the question is not rhetorical, I believe I can address that. Well, let's say it's not rhetorical. So why don't you try to address it? Sure. Okay. Thank you. And that is, again, I think I heard this argument earlier today, and that is you have to look at the context of things. Excuse me? You have to look at the context of things. And if you look at the letters that Allstate had sent, it's insured. It's premium paying insured for Allstate to unilaterally, for example, set an examination under oath to say, oh, you and your attorney will need to be there all day. We've picked the state. I guess I would ask, is that good faith? And if one responds in the same way, is that for an insurance company to behave that way as good faith, for an insured to object as bad faith? So giving life for life? To quoque, in other words. Say what? To quoque. To? Quoque. You did it to kind of thing. Here we are in the sandbox, and you threw sand at me. I'll throw it back at you. That's what you're really saying. How can it be bad faith? What I'm saying is, how can there be different standards for the way an insurance company treats its insured and the way that the insured responds? Did the policy itself have a specific provision saying that your insured had to appear for an examination under oath? Your Honor, that's the gist of the case. Well, maybe you can answer the question. Did it have such a provision? It had no such provision. Did it have any provision that specifically said you're not allowed to file a complaint? That you've given a sworn statement under oath? It had no such provision, Your Honor. And so, in terms of the prejudice here, even if the district judge found that you had violated some condition of the policy, what's your best argument as to whether prejudice ensued? Well, Your Honor, the insurance company made no attempt to show any prejudice had ensued whatsoever. In the civil litigation, where they denied some ability to take your client's examination under oath? No, and certainly they would have been able to take Ms. Parker's, their insured's, deposition. And I believe the court is thinking of the Goodstein case, which is, of course, the circuit's decision, which holds that even if the insured breaches the policy, the carrier must still show prejudice. And there was no attempt at prejudice. There is no prejudice. That seems to be required by Washington law. It does seem to be required by Washington law. The way I understand it. That prejudice be shown and no prejudice has, in fact, been shown. Now, there's a state, although there wasn't a clause in the policy requiring an examination under oath, there was a cooperation clause, correct? There was. And there was a state, there is a state statute that authorizes insurance companies to request or, I guess, request a examination under oath. And under Washington law, those state statutes, or as I understand it, are read into the policies. So there was, I mean, there was some, there was a, call it a statutory obligation on her part to appear at some point for an examination under oath. Or was there? I mean, that's a good question. And in fact, all states not been able to and. Well, that's one way you could read it. I mean, the law, I mean, there is case law that says that the state insurance statutes or some are read into the policy, correct? The state insurance statutes are read into the policy for the protection of the insured. The regulatory statutes are not intended to expand the power of the insurance company against the consumer. But why is an examination under oath a matter that's against the, the insured? Yes. It's a question of how many. I mean, whether you, whether you do a, you know, an examination over the phone, they want the story. Why is submitting to a, or, you know, going through an examination under oath, why is that against the insured? It's an additional burden. For example, if you look at the letter that was sent advising Ms. and spend the entire day with an attorney being examined under oath. Oh, my goodness. Once she filed the lawsuit, they could have just served you with a notice to appear for her deposition and they could have kept her there all day and the next day. I guess that was my point about no prejudice. And just by background, what kind of medical bills, is this a huge case where they are going to take an all day deposition? I mean, how much was she claiming in medical bills and what kind of major permanent injury was she claiming in your letters? Your Honor, unfortunately, that's the part I didn't review for this case is the amount of her medical bills. Try to answer. How much were you talking about? I will. My recollection is that her total special damages of income loss and medical bills were under $20,000. It might have been under $15,000. Any permanent injuries? I mean, like major eyesight or legs off or things of that nature. This was a rear ender, right? Yes, there's nothing. She had a knee surgery, but I mean, she wasn't left using crutches or a walker or anything like that. So, was that? It's what we call a soft tissue injury. No, she had an injury to her knee. And had to have corrective surgery on her knee. Your Honor, unless the court has additional questions, I'd like to reserve my remaining time for rebuttal. Okay. Good morning, Your Honor. Rory Lead on behalf of Allstate. Allstate is requesting this court affirm the trial court's dismissal. And Your Honor, as I've read the pleas, it is very clear that for whatever reason, Ms. Parker did not want to cooperate with Allstate's investigation. I always tell attorneys, never use the word clearly. Never use... I mean, every time someone uses the word clearly, it's almost a sign to judges that something is not clear or something is contested. So, just a recommendation. You're better off staying away from that term. Thank you, Your Honor. The record shows that from the beginning, Ms. Parker did not want to cooperate with Allstate's investigation. They spent six months trying to get medical authorization from her. They filed a full reservation of rights letter outlining all the duties and obligations she had. Her response was to file a... Why did you file a reservation of rights? To try and put the attorney on notice that she's not cooperating. Reservation of rights is a statement that you may not insure her. Correct, because she's not cooperating. What was in the accident that indicated that it wouldn't be an insured event? So, this accident involved soft tissue injuries and an allegation that this fairly minor accident caused her to have knee surgery. The insurance company was trying to get medical records... Property damage, was it? I don't recall that off the top of my head. Is it like a bumper or is it $5,000, $10,000 in car damage? I would characterize it as a minor impact accident. So, you don't have a provision in this policy, though, that specifically requires her to appear for an examination under oath? I agree, Your Honor, but Washington has a statute directly on point. You guys have those provisions in all kinds of your policies, don't you? Yes, all state does in certain policies and some they don't. So, in the Washington state statute, it says that you can require her to give an examination under oath, but your policy doesn't make any statement that an examination is required. First, Your Honor, in Washington, going back to 1894, Washington has approved examinations under oath. As late as 1994, the Washington Supreme Court said you don't appear for examination under oath, there's no coverage. The legislature was well aware of all of these cases going back over 100 years, yet they made this statute, and the statute's very clear on its language. It says, a person... You should follow his advice, because let me tell you, it's not clear to me... I apologize for my use of words. ...how that statute actually relates to the policy. Or is it clear under Washington law? The statute reads, Your Honor, if a person, in this case, Ms. Parker, makes a claim under a policy of insurance, which she did with Allstate, the insurer, in this case Allstate, may require that the person be examined under oath. So the legislature is saying here... Well, let me take you to the next, but it doesn't say anything about may require the examination under oath be before any lawsuit is filed. The case law that the legislature would have known when they wrote this letter, because it had been around for 100 years or more, was that you absolutely can take an examination under oath in the state of Washington, and they take place before litigation. Well, it doesn't have to take place before litigation. There's no statement in the legislation that says you can't file a lawsuit unless such an examination has predated it. So the legislature would know, again, the extensive case law... It's also very risky to say what some legislature... If you've got 30 state senators, there's probably 43 intents with regard to what a particular piece of legislation is intended to do. But when you interpret a statute, when we interpret a statute, we are to presume that the legislature meant what they said, and they said what they meant. And in this case... And that they knew the law, I suppose. Correct. But the problem with your policy, it seems, it says you can't sue unless there is full compliance with the policy terms. And the policy terms say you have to give us written proof and include the details. You may be required to take a physical exam, right? What else? If it's property, you are required to let us see the property, and we can require you to take proper action to preserve all rights to recover damages from anyone else. That's what it says. Those are the terms that I can read so far. And then it says you can't sue until you've complied with the policy terms. So I'm just a regular old insured, and I say, okay, I've got to do all these things, and I can't sue until I do them. That's not what you're asking for. You're asking for something else. We've cited two cases to this court, Britton and Touche. Yes. And those are directly on point, Your Honor. Both of them say specifically, and I'll read the quotes here. From Britton, it says an insurance regulatory statute becomes a part of the policy of insurance. Touche said a valid statute becomes a part of and should be read in the insurance policy. That's long-term standing Washington law. The legislature knew about it. And here's where Ms. Parker's argument fails. Those cases do not state it's one-sided. Those cases do not state that these regulatory statutes become part of the policy only if they favor the insured. That's not the holdings of these cases. And the Washington legislature knew of this. I think you've got problems on that argument. But how do you get a dismissal without a showing of prejudice? So Washington law is settled on this point under Downey. If you don't appear for an examination under oath, it's prejudice. It's a matter of law. Cases where the policy itself had a provision requiring it. Telling that Downey didn't even address the question of prejudice. In a footnote, it says it wasn't raised and we're not discussing it. But if an insurance company is unable to complete its investigation, okay, if an insurance company is unable to take the examination under oath that the legislature says you can take, how can an insurance company fairly evaluate its insured's claims of this measure? Hasn't Washington, though, said on this more general duty to cooperate that there's always a requirement that you show some prejudice before you can throw a case or a claim out for a lack of cooperation? We believe there's prejudice as a matter of law when you don't appear for an examination under oath. Why are you taking an oath? Because there's a big difference, as Your Honor was talking about, with a short recorded statement by a claims adjuster versus an examination. How many pages was the statement this time? I don't know, Your Honor. It's not part of the record how long the court statement was. How long does it take? I don't know. I would imagine that counsel's probably right. It was 20 to 30 minutes, give or take. So on a claim of this size, that's not generally sufficient? I think that there's a big difference, Your Honor, between being under oath and not under oath. If there are significant issues, and you saw this claim, there was very much antagonism throughout the claim. The insurance company in Washington has an absolute right to fully investigate the claim and then make a decision. You're probably correct that both counsel acted like juveniles through the whole thing. I respectfully disagree. Why didn't you just take her deposition once you filed the lawsuit? You could have just subpoenaed her to appear for a deposition if she wasn't going to cooperate. I think this gets back to Judge's last position. I don't see, you know, no wonder you didn't try to show any factual prejudice because you really can't show any. I completely disagree, Your Honor. There's a huge difference between an examination under oath and a deposition. What's the difference? Once the parties are in litigation, they are now completely adverse. All the rules of civil litigation apply. And now you've got bad faith claims and everything else pending. You've already given her a reservation of rights. You were really adverse at the time that you gave that. I disagree, Your Honor. Just because you get a reservation of rights does not mean your litigation with the parties are absolutely adverse. You all couldn't have been much more adverse, I would say. But I would say, Your Honor... Lawsuit or no lawsuit? There is a significant difference between an examination under oath and a deposition. Let me ask something else. You said Washington does require prejudice in general if the insurer doesn't follow the terms of the policy in some way. Would that apply to any of these things under proof of claim, medical reflux? Are you saying, well, it doesn't apply to those? No, Your Honor. I completely agree with your statement that Washington requires prejudice to have a dismissal based on fair to cooperate. So under all these other proof of claim things that are in the policy, if the person doesn't properly cooperate with, say, a medical exam, do you have to show prejudice? I believe that in the Albee v. Farmers, the court ruled that that is prejudice as a matter of law and not to appear for an independent medical examination. If the person's not doing any of these things in your policy, you're saying those are all prejudice as a matter of law? Any of these things under proof of claim? That was my question to you, Billy. So what I would say is there's Washington case law that, yes, if you don't complete a proof of loss, that's prejudice as a matter of law, and the case is dismissed. If you don't appear for an IME so that a doctor can evaluate your claim, that is prejudice as a matter of law. Similarly, Your Honor, I would say if you don't appear for examination under oath, it is prejudicial. At the early stages of a claim, an insured has a duty to come forward with evidence. How are you disadvantaged one way or the other? Say you took her deposition 15 days after the lawsuit was filed instead of taking it a month before the lawsuit was filed. What information in this record was lost during that period of time? So Ms. Parker didn't raise this issue, so it wasn't briefed. I'll represent to the Court that there is case law throughout this country that talks about the difference between an examination under oath and a deposition, and it is significant. The reason being, again, in an examination under oath, you as an insured have a duty to be forthcoming. You have a duty to give evidence. As this Court knows in a deposition, that is not the case. You have a duty. You can lie at a deposition? You can only answer the question. There's a difference. But you're suggesting that you're free to lie and just tell the truth and not be honest. Yet, if you go to an examination under oath, you have a special obligation to be honest, but not if you're under oath in a deposition. No, what I'm saying is, and courts have found this, Your Honor, is that in an examination under oath, an insured has a duty to be forthcoming. Not just to answer the question, but to give knowledge, give information to the insurance company. In this case, she's rear-ended. Presumptively, she never saw the car that hit her. What's the argument that she had some pre-existing knee injury? That was the issue that they were trying to figure out. Again, as this Court is aware, there's a big difference between making a statement to an insurance company, record a statement, and then making an insurance company under oath. You got medical releases from her, though? Ultimately, they did get an altered medical release. In terms of her statement under oath, what do you care? What you really want is the releases, and you'll get whatever medical history of prior knee injury she's already had. So, by having the person under oath, then they are obligated, under oath, to disclose who their prior medical providers were, whether they had any accidents or other issues with the knee. If they don't tell the truth, then that is misrepresentation and concealment, and there's no coverage under the policy. And that, I would offer, is one of the reasons why the legislature included this information in the statute. That they wanted insurance companies to be able to conduct examinations under oath in this state, even if they didn't have a patient policy. I think you've got your history wrong. History, actually, was that they included the examination under oath because there had been an inability to bring perjury charges against somebody who had made this sworn statement. That's Ms. Parker's argument, Your Honor, but that's not correct because the state legislature made a specific criminal offense, 9A.72.030, that specifically talks about lying under oath and examination under oath. There's no reason to have this additional language in the examination under oath statute because they created this 9A.72.030. Why would the legislature create language that they didn't need? The reason is they wanted to give insurance companies the ability to request examinations under oath and require attendance. Well, in terms of the attendance, she called your office. Why didn't you just have... What record evidence is there? Why you didn't just call her back and tell her, I'm going home, I'm not coming, I'm going to reschedule this? So, I did not submit a declaration in the lower court because I did not recall what happened that day, whether I was in depositions, I was out of the office. Well, do you have any evidence that disputes the fact that she called and that your fax went out some hours after she called? I have no dispute with her declaration saying she called my office and then my office sent her a letter saying, calls to reschedule because it was very clear from her prior correspondence that she wasn't deciding on whether or not to appear until... Well, if she called you the day before, you know that she's going to appear. So, what I would say, Your Honor, is at best, okay, there was a miscommunication about when the examination under oath was going to go forward or take place. Well, why would there be a miscommunication if she calls and tells you, I'm going to be here on the 17th and my client is going to submit to the examination under oath? What I say is, again, at best, there was a miscommunication. It was very, very clear from her prior correspondence and there had never been telephone calls... No, but on the day before, say, taking your argument, and her earlier letters were equivocating, but on the day before the date you had picked for the examination, she calls up and says, I'm going to be here and my client's going to be here for the examination under oath. What was equivocal about that? Well, if in fact that's what she said, and again, I can't comment on it, but what I can say is... She's got a sworn oath. She's got a sworn affidavit and you don't have anything... So, again, I would say, if you go back to the prior correspondence of Ms. Parker's attorney, it's very clear about what she said and whether she was going to appear or not. I sent her a letter saying, please contact me to reschedule and she never did. I mean, just to the point, you say I may not appear for the deposition. You call up the day before and say, oh, yes, I will appear. And then if I send you a letter, say, hey, let's just reschedule. Don't you just reschedule with me, Your Honor? Well, you don't say anything about that. You say, just send me some dates. But if, and again, best case scenario, if there's a misunderstanding between you and I, don't you just call me back, Your Honor, and say, let's reschedule? Well, I guess the point would have been, if your letter to her had said, we received your communication saying that you were going to appear tomorrow, but I've already rescheduled things. Send me some additional dates and we'll reschedule it. Why don't you answer this? If you can respond to Judge Glynn's question, then your time is up. Thank you. Judge, again, the best case scenario, if you believe what Ms. Parker is saying, there was a miscommunication about the date that was quickly resolved by my office and I offered to reschedule pretty much at any time. Call me by a certain day and we'll figure this out. But that was never done. There was never even an attempt made to remedy that situation. And as is, of course, well aware, that's something you want attorneys to do. Thank you. Thank you. Thank you, counsel. You have a few minutes for rebuttal, I believe. Okay. All right. Fine. Thank you. Then the matter will be submitted at this time. Thank you, counsel. Thanks. That ends our session for today. Thank you.
judges: Gwin, Fernandez, Paez